**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| ANOISON JAPAN CO., LTD.,<br>Plaintiff,<br><br>v.<br><br>ANOISON ELECTRONICS, LLC,<br>WILLIAM HALLETT, and<br>RIVET WEB MARKETING LLC,<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 3:26-CV-2254<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF ANOISON JAPAN CO., LTD.'S VERIFIED COMPLAINT FOR TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, CYBERSQUATTING, CONTRIBUTORY INFRINGEMENT, AND DECLARATORY RELIEF; AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTION**

Anoison Japan Co., LTD. ("Plaintiff" or "Anoison Japan") hereby files this Verified Complaint for Trademark Infringement, False Designation of Origin, Cybersquatting, Contributory Infringement, and Declaratory Relief; and Emergency Application Preliminary Injunction and Permanent Injunction (the "Complaint"), verified by the attached Declaration of David Zhou (Exhibit 1). Plaintiff respectfully shows the Court as follows:

## I.
## INTRODUCTION

1. This is a federal trademark and unfair-competition case about Defendants' attempt to seize the ANOISON brand in the United States through a copied website, a newly registered confusing domain name, and emergency state-court filings that rest on a false premise of ownership. From 2008 to April 2026, Zhou Wei Quan (David) ("Zhou" or "Mr. Zhou") owned

and controlled the ANOISON trademark, which rights he assigned on April 22, 2026, to Anoison Japan.

**Assignment 1**

**Reel/ Frame**
9248/0603

**Pages**
2

**Assignors & execution date**
ZHOU, WEIQUAN

**Execution date:** Apr 22, 2026
**Entity type:** INDIVIDUAL

**Correspondent**
Stephen S. Ashley Jr.

10700 SIKES PL, STE. 230
CHARLOTTE, NC 28277

ter.uspto.gov/search/trademark/abstract%3FserialNumber%3D77267916

Assignment Center

**Conveyance**
ASSIGNS THE ENTIRE INTEREST

**Recorded**
Apr 27, 2026

**Citizenship:** CHINA

**Assignee**

ANOISON JAPAN CO., LTD.
5F, BASHAMICHI DOMON BUILDING;
4-53-2, BENTENDORI, NAKA-KU
YOKOHAMA
JAPAN
231-0007

**Entity type:** CORPORATION
**Citizenship:** JAPAN

**Attorney docket number**
2121.5

**Domestic representative**
N/A

(Exhibit 1, the Declaration of Zhou Wei Quan ("Zhou Dec."), ¶¶ 7, 12–14; Ex. D.)

2. Now, Anoison Japan owns U.S. Trademark Registration No. 3,636,004 for ANOISON, including the associated goodwill and enforcement rights, registration of the ANOISON domain, and website utilizing the ANOISON brand. (Zhou Dec., ¶¶ 4–14 and Exhibit A, the WHOIS/RDAP record for www.anoison.com; Exhibit B, the Liquid Web invoice confirming registration of the anoison.com domain.).

3. Defendant Anoison Electronics, LLC ("Anoison Texas") historically functioned as a conduit for the order-intake and payment-collection of ANOISON-branded products in the United States. It did not own the ANOISON mark, did not manufacture ANOISON products, did

not control the supply chain, and did not own www.anoison.com. (Zhou Dec. ¶¶ 15-17, 26–32, 38.)

4. Defendant William Hallett is a member/manager and operational participant of Anoison Texas who verified and supported the Travis County petition and TRO application claiming that Anoison Texas owns the ANOISON name, mark, website, domain, customer relationships, and goodwill. (*See* Exhibit J, the Temporary Restraining Order issued in Cause No. D-1-GN-26-004850, *Anoison Electronics, LLC v. Anoison RF, Inc. and Zhou Wei Quan,* (the "TRO Petition").) Those assertions conflict with the federal trademark record, the USPTO assignment record, and the history of the ANOISON business.(Zhou Dec. ¶¶ 8–13, 22–27.)

5. Defendant Rivet Web Marketing LLC ("Rivet") is a Texas web-marketing company located in the Northern District of Texas. Upon information and belief, Rivet created, launched, hosted, maintained, administered, optimized, and/or continued to support the infringing website www.anoisonusa.com for Anoison Texas, Hallett, and/or their representatives after actual notice that Anoison Japan and Zhou disputed Anoison Texas's ownership claims and after notice that anoisonusa.com was an unauthorized infringement of the ANOISON brand. (Exhibit K, Rivet website email communications involving Steven Snyder, Cory Raper, Zhou, Wu Shanshan, Lisa Bradford, and William Hallett, ("Rivet Emails"); Exhibit M, July 6, 2026 cease & desist demand and preservation letter from Anoison Japan to Rivet Web Marketing LLC).

## II.
## SUMMARY OF THE CLAIMS

6. The infringement is direct and deliberate. The anoisonusa.com website uses the ANOISON name, ANOISON logo, ANOISON product categories, product-selector functionality, Build-a-Cable functionality, contact channels, photographs, website structure, and trade dress to hold itself out as an authorized United States ANOISON channel. (Zhou Dec. ¶¶ 42–57; *Compare*

Exhibit H, the PageVault authenticated capture of anoisonusa.com with Ex. I, the PageVault authenticated capture of anoison.com). Even a cursory review confirms that anoisonusa.com is infringing on the ANOISON mark and basically copying anoison.com almost verbatim:




(Ex. H at 11, “Infringing Website”).




(Ex. I at 11, "Authorized Website").

7. Emergency relief is necessary because every day the infringing website remains live and Defendants continue representing themselves as the United States ANOISON channel, customers and vendors are confused about who owns the brand, where orders should go, and who can actually fulfill ANOISON-branded products. (Zhou Dec. ¶¶ 28–32, 40–44, 53–63.)

8. Anoison Texas cannot fulfill future ANOISON orders because Anoison Japan and Anoison China will not supply it. (Zhou Dec. ¶¶ 28-31, 38, 40–41, 57.)

9. Anoison Japan will separately seek a preliminary injunction requiring Defendants to stop using ANOISON, ANOISON USA, anoisonusa.com, and confusingly similar designations; stop publishing and supporting the infringing website; preserve website, domain, DNS, hosting, analytics, source-code, content, logs, and communications evidence; and stop interfering with

Anoison Japan’s authorization of Anoison RF, Inc. to conduct authorized ANOISON-branded United States business.

## III.
## PARTIES

10. Plaintiff Anoison Japan Co., Ltd. is a Japanese corporation with its principal place of business at 5F, Bashamichi Domon Building, 4-53-2, Bentendori, Naka-ku, Yokohama, Japan 231-0007. (Zhou Dec. ¶ 7.) Anoison Japan is the owner of U.S. Trademark Registration No. 3,636,004 for ANOISON. (Zhou Dec. ¶¶ 7, 12–14; Ex. D.)

11. Defendant Anoison Electronics, LLC is a Texas limited liability company. Anoison Texas maintains a principal place of business at 310 Winchester Drive, Dripping Springs, Texas 78620 where it may be served with service of process through its registered agent William Hallett, or wherever he may be found..

12. Defendant William Hallett is a citizen and individual residing in Texas, and may be served with service of process at 310 Winchester Drive, Dripping Springs, Texas 78620, or wherever he may be found.

13. Defendant Rivet Web Marketing LLC is a Texas limited liability company and may be served with service of process upon Steven Snyder as registered agent, at 1214 Kent Brown Road, Garland, Texas 75044, or wherever he may be found.

## IV.
## JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 1338(a) and (b) because this action arises under the Lanham Act, including 15 U.S.C. §§ 1114(1) and (2), 1116, 1117, 1125(a) and(d)..

15. This Court has jurisdiction over Anoison Japan's declaratory-judgment claims under 28 U.S.C. §§ 2201 and 2202 because an actual and immediate controversy exists concerning ownership, use, authorization, infringement, and control of the ANOISON mark, the ANOISON USA designation, anoisonusa.com, and Defendants' ability to hold themselves out as an authorized ANOISON source.

16. This Court has supplemental jurisdiction over Anoison Japan's related claims arising under the laws of the State of Texas pursuant to 28 U.S.C. §§ 1338(b) and 1367 because those claims are substantially related to its federal trademark claims such that they form part of the same case or controversy under Article III of the United States Constitution . U.S. Const. art. III, § 2, cl. 2.

17. This Court has personal jurisdiction over Defendants because they are a Texas resident and Texas entities, have purposefully directed challenged conduct into and from Texas, and have used Texas-based business operations to publish, maintain, support, and promote the accused website and confusing marketplace communications.

18. Venue is proper in the Northern District of Texas under 28 U.S.C. §§ 1391(b)(1), 1391(b)(2), 1391(c)(1) and (2), and 1391(d). All Defendants reside in Texas for venue purposes. Rivet resides in this District. A substantial part of the acts and omissions giving rise to the claims occurred in this District because Rivet, from this District, created, hosted, maintained, administered, optimized, supported, or continued to support the accused website and related digital assets.

## V.
## FACTUAL ALLEGATIONS

### A. The ANOISON Mark and the ANOISON Business

19. The ANOISON mark has been used in commerce in connection with RF, microwave, telecommunications, connector, cable, adapter, antenna, and related electronics goods since at least 2005. ( Zhou Dec. ¶ 4.)

20. On March 15, 2005, Mr. Zhou personally registered www.anoison.com and continued to pay for and control that website. ( Zhou Dec. ¶ 5; Ex. A; Ex. B.)

21. Since at least 2005, United States customers have purchased ANOISON-branded products from Anoison Electronics, Ltd. ("Anoison China"), Zhou's Chinese manufacturing facility. Anoison China is the source of ANOISON-branded RF, microwave, telecommunications, connector, cable, adapter, antenna, and related electronics products sold into the United States. (Zhou Dec. ¶ 6.)

22. Anoison Texas falsely represents itself as having an ISO 9001:2015 certificate:




(Ex. H Infringing Website at 36)

23. Which is completely misleading as Anoison China holds the ISO certification:



CCCI

QUALITY MANAGEMENT SYSTEM CERTIFICATE

Registration No. U006625Q0334R4S

ANOISON ELECTRONICS LTD.

social credit code : 91321100678324295X
Registration Address:F3 of North Side, Building A, Youyou Industrial Park (The 1st Building), Panpong Village, Zhenjiang City, Jiangsu
Office/Production Address:8-1-3, Xingxi Road, Jingkou District, Zhenjiang City, Jiangsu

is in conformity with

ISO 9001:2015

This certificate is valid for the following scope:

The design and manufacture of RF/microwave connectors, cable assemblies and coaxial terminations

Initial certification date: December 13, 2013 This certificate is valid to December 10, 2028

The scope which needs administrative permission shall be in accordance with valid license.
In the case that the organization regularly receives surveillance assessments, the certificate shall be valid when used together with the Notice for Maintenance of Use of Certificates and Logos.
Information about the certificate can be queried on the official website of CNCA (www.cnca.gov.cn) and the website of Huaxia Certification Center (www.ccci.com.cn)
Note:In case of any ambiguity in the expression of the English certificate, the Chinese version shall prevail.

China Certification Center, Inc.
At: Taifi Commercial Building, No.211 Beishuan Zhonglu, Haidian District, Beijing, P.R. China
http://www.ccci.com.cn

General Manager:

Date of Issue: December 4, 2025

IAF
MEMBER OF MULTILATERAL RECOGNITION ARRANGEMENT

UKAS
MANAGEMENT SYSTEMS
0066

(Ex. N at 1 and 8)

24. Sales into the United States have been facilitated by Anoison Japan. (Zhou Dec. ¶ 7.)

25. On August 30, 2007, Zhou caused the filing of the federal trademark application for ANOISON in the United States. (Zhou Dec. ¶ 8; Ex. C.)

26. U.S. Trademark Registration No. 3,636,004 for ANOISON was issued on June 9, 2009 and covers goods in International Class 009, including antennas, electrical plugs, electrical sockets, electrical connectors, electric cables, connectors for electronic circuits, fiber optic cables, radar receivers with amplifiers, and telecommunications transmitters. (Zhou Dec. ¶ 9; Ex. C.)

27. The ANOISON registration is live, active, renewed, and on the Principal Register. ( Zhou Dec. ¶ 10; Ex. C.)

28. Before April 22, 2026, the USPTO record identified Zhou as the registrant and owner of Registration No. 3,636,004. ( Zhou Dec. ¶¶ 11–12; Ex. C.)

29. On or about April 22, 2026, Zhou executed a formal assignment conveying his entire right, title, and interest in U.S. Registration No. 3,636,004, including the registration itself, associated goodwill, and enforcement rights, to Anoison Japan. ( Zhou Dec. ¶ 12–13; Ex. D.)

30. The assignment was recorded with the USPTO on or about April 27, 2026 at Reel/Frame 9248/0603 and states that the conveyance assigns the entire interest to Anoison Japan. (Zhou Dec. ¶ 12; Ex. D.)

31. Anoison Japan is the owner of the ANOISON mark, U.S. Registration No. 3,636,004, and associated goodwill. ( Zhou Dec. ¶¶ 12–13; Ex. D.)

### B. Anoison Texas Was a Sales Channel, Not the Trademark Owner

32. The purchasing workflow for ANOISON-branded products sold into the United States has always been centrally controlled by Anoison China. (Zhou Dec. ¶¶ 15–21.)

33. Customer inquiries and purchase orders historically flowed through several channels, including directly to Anoison China, through www.anoison.com, independent sales representatives, or regional sales managers. (Zhou Dec. ¶ 16(a).) Anoison China addressed and processed inquiries, generated quotations, and set pricing. (*Id.*)

34. Anoison Texas did not issue separate purchase orders to Anoison China. (Zhou Dec. ¶ 16(b).) Anoison China processed U.S. customer orders directly and shipped ANOISON-branded products directly to U.S. customers. (*Id.*)

35. Anoison Texas functioned solely as an order-intake and payment-collection conduit for Anoison China. (*Id.*) It never maintained its own inventory or independent fulfillment capabilities. (*Id.*)

36. All delivery information, tracking numbers, and invoices were generated and provided exclusively by Anoison China. (Zhou Dec. ¶ 16(d).)

37. Approximately every three to four months, after Anoison Texas collected payment from U.S. customers, Anoison Texas wired funds to Anoison China. (Zhou Dec. ¶ 16(e).)

38. Zhou caused Anoison Electronics, LLC to be formed in New Hampshire on or about July 20, 2009. At that time, Zhou owned 99% and Greg Pollack owned 1%.(Zhou Dec. ¶ 21–22; Ex. F.) The purpose of Anoison Electronics, LLC was to create a United States sales channel for ANOISON products. (Zhou Dec. ¶ 22.)

39. In 2023, Zhou entered into an LLC Interest Purchase Agreement (the "IPA") concerning his unit interests in Anoison Electronics, LLC.

**ARTICLE 1**
**PURCHASE AND SALE**

1.1 Purchase and Sale of the Seller Interest. Upon and subject to the terms and conditions of this Agreement, the Seller will sell, assign, transfer and deliver to the Purchasers, in the amounts referenced above, free and clear of all liens, claims or encumbrances of whatever kind and nature, and the Purchasers will accept from the Seller and purchase and pay to the Seller the Consideration (as defined in Section 1.2 below) for the Seller's Interest.

1.2 Total Consideration. The parties hereto agree that (the "Consideration") to be paid by Purchasers for the Seller's interests is the grant of a prepaid option of Seller to reacquire the Seller's Interest, in whole or in part. Upon Seller notifying any affected Purchaser and the Company in writing of his intent to reacquire, in whole or Part, Seller's Interest, the affected Purchaser and Seller will execute a retransfer of said Seller's interest to Seller, at not additional charge. The retransfer will be a sale, assignment, transfer and delivery to Seller of the noticed Seller's Interest being conveyed, free and clear of all liens, claims or encumbrances of whatever kind and nature. The notice referenced herein may be given at any time Seller gains United States (or TAA Designated Country) citizenship, or within ten (10) years thereof. Should Seller not timely exercise his option to repurchase, the option will expire on its terms.

(Zhou Dec. ¶ 24; Ex. F at §§ 1.1-1.2)

40. The IPA was drafted by Anoison Texas's counsel, not Mr. Zhou, and the representations that Anoison Texas relies upon to fraudulently claim ownership, come from Anoison Texas, not Mr. Zhou:

3.8 Legal Counsel. Seller understands and agrees that Lee Vickers of the firm Martinec, Winn & Vickers, P.C., Austin, Texas represents the Company only in preparing this Agreement and in no way represents or has represented Seller or his agents or confidants or Purchaser or his or their agents or confidants in doing so. Seller and Purchaser have been encouraged to and have availed themselves of the opportunity to utilize counsel of their own choice in all aspects of this Agreement and is relying solely on their own counsel in proceeding. Company agrees that Vickers has not rendered federal tax advice to Purchaser, and each party, including Company has sought and obtained separate tax advice regarding all aspects of this Agreement to its, or their satisfaction.

**ARTICLE 6**
**REPRESENTATIONS AND WARRANTIES OF COMPANY**

The Company hereby represents and warrants to Purchaser, subject to such exceptions as are specifically disclosed with respect to specific numbered and lettered sections and subsections of this Article, as follows:

( Ex. F at §§ 3.8 and )

41. Steven Young, also a "Purchaser," made the representations on behalf of the Anoison Texas. (Ex. F at p. 19).

42. For reasons unknown, Anoison Texas made representations about undefined intellectual property that it allegedly owned:

6.14 Intellectual Property.

The Company has valid and enforceable rights under Trademark law, contracts, or licenses to use all Company Intellectual Property necessary to the conduct of its business as currently conducted and which is not owned by the Company. Specifically, the Company (i) owns exclusively all trademarks, service marks and trade names used by the Company in connection with the operation or conduct of the business of the Company, including the sale of any products or technology or the provision of any services by the Company (excluding any third- party trademarks, service marks and trade names used in connection with third party products or services or the identification of third parties) and (ii) owns exclusively, and has good title to, all copyrighted works that are Company products or other works of authorship that the Company otherwise purports to own; *provided, however*, that such works may incorporate copyrighted works or works of authorship, trademarks, or trade names of third parties which are licensed to the Company or are in the public domain.

(q) To the extent that any Company Intellectual Property has been developed or created by any Person other than the Company, the Company has either (i) obtained ownership of, and is the exclusive owner of, all such Intellectual Property by operation of law or by valid assignment of any such rights or (ii) has obtained a License under or to such Intellectual Property.

(Ex. F at p. 19).

43. Whatever Anoison Texas thought it owned, it did not own (ever) the ANOISON mark, and the IPA does not identify U.S. Registration No. 3,636,004, Serial No. 77267916, the ANOISON mark, www.anoison.com, or any assignment of the federal trademark registration. (Zhou Dec. ¶¶ 37–38; Ex. F at 6.14).

44. Mr. Zhou did not transfer and did not intend to transfer his personal ownership of the federal ANOISON trademark registration through the 2023 unit-interest transaction. (Zhou Dec. ¶¶ 37–38; Ex. F.)

45. Anoison Texas has never owned or controlled www.anoison.com. (Zhou Dec. ¶ 32.)

46. Anoison Texas does not manufacture products and has no license or other contractual right to sell products under the ANOISON mark. (Zhou Dec. ¶ 28.)

47. Anoison Japan has no contract with Anoison Texas and will not fulfill orders for ANOISON-branded products for Anoison Texas. ( Zhou Dec. ¶¶ 29; 41.)

48. Anoison China has no contract with Anoison Texas and will not fulfill future orders for ANOISON-branded products for Anoison Texas, except as to valid orders already paid for or shipped before authorization was withdrawn. (Zhou Dec. ¶¶ 30, 41.)

**C. Anoison RF Is Authorized by Anoison Japan to use the ANOISON Mark.**

49. Zhou is an officer, director, and owner of Anoison RF, Inc. (Zhou Dec. ¶ 33.)

50. Anoison Japan has authorized Anoison RF to use the ANOISON mark in connection with the sale and distribution of ANOISON-branded products in the United States. (Zhou Dec. ¶¶ 34–35.)

51. Anoison RF uses the ANOISON name with authorization from Anoison Japan, the owner of the federal ANOISON mark. (Zhou Dec. ¶ 35.)

52. Anoison RF is not impersonating Anoison Texas because Anoison Texas has no trademark ownership or product-supply rights to be impersonated. ( Zhou Dec. ¶ 36.)

53. Because Anoison Texas is no longer authorized to submit orders, some United States customers transitioned to directing the same purchase orders to Anoison RF. (Zhou Dec. ¶ 20.) In some cases, customers updated the vendor name in their internal purchasing systems from Anoison Texas to Anoison RF and submitted purchase orders accordingly. (*Id.*)

**D. Defendants Registered or Caused Use of anoisonusa.com and Copied the ANOISON Website**

54. On information and belief, on or about May 20, 2026, Anoison Texas caused the registration of the domain name anoisonusa.com. (Zhou Dec. ¶ 42; Ex. G.)

55. The anoisonusa.com domain incorporates the entire ANOISON mark and adds only the generic geographic term "USA." That addition increases confusion because it falsely suggests an official United States presence, branch, affiliate, or successor of the ANOISON brand owner. (Zhou Dec. ¶ 43.)

56. A PageVault authenticated capture of anoisonusa.com taken July 1, 2026 shows that the site prominently displays the ANOISON logo and the page title "RF & Microwave Connectors, Cable Assembly Solutions | Anoison." (Ex. H: Zhou Dec. ¶ 44.)

57. The anoisonusa.com website presents itself as a fully operational commercial ANOISON-branded business marketing RF, microwave, and mmWave products. (Zhou Dec. ¶ 44; Ex. H.)

58. The anoisonusa.com website uses customer-facing telephone numbers, including "Call Us: 800.537.0680" and "International: +1.512.607.6667," and language options for English and Japanese. (Zhou Dec. ¶ 45(a); Ex. H.)

59. The site includes navigation links for "Build a Cable," "Product Selector," "Products," "Resources," "News," "About," and "Contact Us." (Zhou Dec. ¶ 45(b); Ex. H.)

60. The site uses marketing language including "Solutions for Your RF, Microwave & mmWave Requirements" and "At ANOISON." (Zhou Dec. ¶ 45(c); Ex. H.)

61. The site displays ANOISON-branded product categories including Connectors, Cable Assemblies, Adapters, Cables, Test & Measurement, Delay Lines, Attenuators, Terminations, DC Blocks, Tools, Accessories, Power Dividers, Couplers, and Waveguide to Coax Adapters. (Zhou Dec. ¶ 45(d); Ex. H.)

62. The site includes a "Build a Cable Tool" through which users can select connector and cable options and submit selections for assistance or a quote. (Zhou Dec. ¶ 45(e); Ex. H.)

63. The site includes an "Anoison Product Selector" displaying thousands of ANOISON-branded product results. (Zhou Dec. ¶ 45(f); Ex. H.)

64. The site includes news cards dated May 6 and May 7, 2026, including "Visiting ANOISON at the Wireless Japan," "Add ANOISON to your Line Card," and "Central Region Sales Manager." (Zhou Dec. ¶ 45(g); Ex. H.)

65. The site uses a footer with the ANOISON logo and invites visitors to contact the business for mmWave, microwave, and RF needs. (Zhou Dec. ¶ 45(h); Ex. H.)

66. The differences between the established anoison.com website and anoisonusa.com are minimal. ( Zhou Dec. ¶¶ 47–51; Ex. H; Ex. I.)

67. The anoisonusa.com website uses the same structure, fonts, styles, colors, photographs, language, titles, headings, explanations, external hyperlinks, news articles, and contact information as the anoison.com website. (Zhou Dec. ¶ 47.)

68. Anoison Japan has not licensed, consented to, or approved Defendants' use of the ANOISON mark, the ANOISON USA designation, or the anoisonusa.com domain. (Zhou Dec. ¶ 52.)

**E. Rivet Had Actual Notice and Continued to Support the Accused Website**

69. Rivet is not a passive bystander. On information and belief, Rivet created, launched, hosted, maintained, administered, optimized, and/or continued to support the accused anoisonusa.com website for Anoison Texas, Hallett, and/or their representatives.

70. Rivet's own communications identify Steve Snyder as Managing Member of Rivet Web Marketing, and Cory Raper as Sr. Operations Manager for Rivet Web Marketing. (*See generally* Rivet Emails; Ex. K.)

71. On or about May 21, 2026, Mr. Zhou emailed Steve Snyder and Cory Raper to demand that Rivet restore his access to anoison.com and instructed Rivet to confirm ownership of the ANOISON mark through the USPTO:

**From:** David I Anoison <david@anoison.com>
**Sent:** Thursday, May 21, 2026 9:05 AM
**To:** 'Steve Snyder' <steve@rivetweb.com>; cory@rivetweb.com <cory@rivetweb.com>
**Cc:** "Wu ShanShan ' ' <wu.shanshan@anoison.com>
**Subject:** RE: OFFICIAL NOTICE: ANOISON BRAND DIRECT OVERSEE & IMMEDIATE CONTRACT TRANSITION

Steve,
Please restore our master administrative access immediately.
Furthermore, regarding the ownership of the intellectual property, I strongly advise you to verify the facts through official channels, such as the United States Patent and Trademark Office (USPTO) database, to avoid being misled.
Please cooperate with my team and transfer the master account credentials and domain control right away.
**David**
Founder & CEO I Anoison

**From:** David I Anoison <david@anoison.com>
**Sent:** Thursday, May 21, 2026 3:16 AM
**To:** steve@rivetweb.com <steve@rivetweb.com>; cory@rivetweb.com <cory@rivetweb.com>
**Cc:** "Wu ShanShan ' ' <wu.shanshan@anoison.com>
**Subject:** OFFICIAL NOTICE: ANOISON BRAND DIRECT OVERSEE & IMMEDIATE CONTRACT TRANSITION

Steve and Cory,
I am reaching out to your team directly because of your combined decades of deep expertise in industrial B2B marketing, tech infrastructure, and your roots in precision manufacturing. As professionals who truly understand the OEM and industrial supply chain, you know that the absolute foundation of any B2B brand lies in its production engineering, factory assets, and registered global IP.
I am David (Weiquan Zhou), Founder, CEO, and global owner of the ANOISON registered trademark and manufacturing IP. We highly value the historical digital support Rivet Web Marketing (RWM) has provided to our brand.
To ensure our web infrastructure aligns perfectly with our global IP protection, analytical accuracy, and defense-contractor compliance, we are restructuring our digital operations. Attached is our official notice regarding an immediate contract transition directly to our global parent group, ensuring your billing and future partnerships are 100% secured with the true source of the brand.
Please review the attached official document (Official_Notice_Anoison_Brand_Transition_2026.pdf) for immediate execution.
Sincerely,
David (Weiquan Zhou)
david@anoison.com
Founder & CEO, ANOISON Group Global Owner of ANOISON Trademark & IP

(Rivet Emails; Ex. K at 11-12.)

72. In that same communications sequence, Steve Snyder acknowledged the notice and stated that Rivet would comply with restoring access to the site. (*See id.* at 2-3) Snyder also stated that Rivet's understanding had been that its client Anoison LLC had trademarks, logos, intellectual property, and engineering-data rights for U.S. operations "until this notice," and identified Rivet services as including hosting of anoison.com, SEO initiatives, and support services. (*See id.*)

73. Rivet, apparently unwilling or unable to access the USPTO website and confirm that Bill Hallett and Anoison Texas did not own or control the ANOISON mark, instead asked Anoison Texas' counsel, Lisa Bradford to prove to Liquid Web that Bill Hallett owned anoison.com:

> On May 21, 2026, at 2:03 PM, Cory Raper <cory@rivetweb.com> wrote:
>
> Hi Lisa,
>
> It was very nice meeting with you earlier today. We truly appreciate your time and guidance in helping Bill navigate this situation and protect the Anoison assets moving forward.
>
> I wanted to make you aware that the DNS records for Anoison.com are currently managed through Liquid Web by the team in Asia.
>
> Web Hosting Solutions I Managed Hosting Built for Reliability, Speed, and Scalability
>
> We previously had access to the Liquid Web account associated with Anoison, but when I attempted to log in yesterday, the password we have on file no longer works.
>
> Access to this account is extremely important because it controls the DNS records for Anoison.com and determines where the domain is pointed. At the moment, the DNS records are correctly pointed to our server and the website is functioning properly. However, whoever has control of the Liquid Web account could potentially change or remove these DNS records, which could cause the Anoison website and related services to go offline and become inaccessible on the internet.
>
> Could you please contact Liquid Web support and provide whatever documentation is necessary to establish that Bill solely owns all rights to the Anoison.com domain so that access to the account can be restored to us?
>
> Liquid Web Support: 24/7/365 Hosting Support I Liquid Web
>
> Please let me know if you need any additional information from our side.
>
> While you are working on this, we will work on getting anoisonusa.com live as a backup option.
>
> Thanks,
> Cory

(Ex. K at 14)

74. In a bizarre turn, Anoison Texas's counsel incorrectly asserted Mr. Zhou had sold the intellectual property, accused him of either being delusional and unstable, or a criminal, and threatened to report him to Homeland Security:

> **From:** Lisa Bradford3
> **To:** David | Anoison
> **Cc:** Cory Raper; Steve Snyder; Bill Hallett; delta@pacbell.net
> **Subject:** Anoison
> **Date:** Thursday, May 21, 2026 7:17:58 PM
>
> Dear Mr. Zhou Wei Quan aka (David)
>
> Everyone is aware of your unfounded claims of ownership, attempts to disrupt Anoison and your potentially illegal actions to highjack Anoison's intellectual property.
> Intellectual property that you sold in 2023.
>
> Your documents conveying all of your interests in Anoison, to include all of its intellectual property, have been provided to its venders and will continue to be provided to anyone doing business with Anoison.
>
> Your actions are either of a delusional and unstable individual or if intentional, are criminal.
>
> Immediately cease and desist your communications to Anoison's venders, to include but not limited to employees of Rivet Web Marketing or I will report your actions to Homeland Security (CISA).
>
> Sincerely, Lisa Bradford

(Ex. O)

75. Cory Raper later forwarded communications to Anoison Texas' attorney, Lisa Bradford, William Hallett, and Steve Snyder stating that David had seen the new anoisonusa.com site, objected to Rivet's support for it, and called the site illegal. (Ex. K at ) Raper also stated that he had not responded and would not respond because Lisa Bradford told Rivet not to respond to the communications.

**From:** **Cory Raper** cory@rivetweb.com
**Subject:** Fw: OFFICIAL NOTICE: ANOISON BRAND DIRECT OVERSEE & IMMEDIATE CONTRACT TRANSITION
**Date:** May 21, 2026 at 6:05 PM
**To:** lisa@bradfordtexas.net, William Hallett bill.hallett@anoisonusa.com, Steve Snyder steve@rivetweb.com

CR

Lisa,

"David" has seen the new anoisonusa.com site and has sent me the email below.

I have not responded to him, nor will I since you told us not to respond to their communication.

Is there anything else we should do?

Thank you,
Cory

--

RWM
RIVET WEB MARKETING

**Cory Raper**
*Sr. Operations Manager | Rivet Web Marketing*
cory@rivetweb.com | Cell: 580-916-1783

---

**From:** David | Anoison <david@anoison.com>
**Sent:** Thursday, May 21, 2026 5:57 PM
**To:** 'Cory Raper' <cory@rivetweb.com>; 'Steve Snyder' <steve@rivetweb.com>
**Cc:** "Wu ShanShan ' ' <wu.shanshan@anoison.com>
**Subject:** RE: OFFICIAL NOTICE: ANOISON BRAND DIRECT OVERSEE & IMMEDIATE CONTRACT TRANSITION

RF & Microwave Connectors, Cable Assembly Solutions | Anoison
Contact Anoison | RF & Microwave Connector Manufacturer
Cory, can you explain why you support Bill for above? It is illegal!

(Ex. K at 4.)

76. As Cory Raper made clear, Rivet's loyalty was to Hallett and Anoison Texas:

> Good morning Bill, Lisa, and Steve,
>
> I hope everyone had a good Memorial Day weekend as well
>
> We checked the Anoison.com website again this morning, and we do still have access to the backend administration area of the site at this time.
>
> We did notice that Bill has been removed from the Contact page on the Anoison.com website. I also confirmed that both Bill and Steve are still listed on the AnoisonUSA.comsite.
>
> We want to make it clear that our loyalty is to Bill and his team. Up until recently, we had never been contacted by the overseas team regarding the website or hosting ma during the course of our working relationship The recent communications have only surfaced during this disagreement
>
> From our perspective, we are continuing to monitor the hosting, and availability of the site while legal direction is being determined.
>
> Is there any resolution in sight between the parties, or any guidance on how you would like us to proceed moving forward?
>
> Thanks.
> Cory

(Ex. K at 17)

77. Rivet therefore had actual notice of the ownership dispute, the dispute over website and domain access, the assertion that Anoison Texas did not own the mark, and the objection to Rivet's support of the new anoisonusa.com site.

78. On July 6, 2026, Anoison Japan sent Rivet, Steven Snyder, and Cory Raper a written demand letter concerning unauthorized use of the ANOISON mark and creation/operation of anoisonusa.com. (Ex. N.)

79. The July 6 letter demanded that Rivet disable public access to anoisonusa.com or remove all ANOISON marks, logos, trade dress, product content, photographs, catalog content, Product Selector content, Build-a-Cable content, contact forms, and other materials suggesting affiliation with Anoison Japan. (Ex. N.)

80. Despite actual notice, on information and belief, Rivet continued to supply services or practical assistance that enabled Anoison Texas and Hallett to keep anoisonusa.com live, accessible, and misleading in commerce.

**F. Hallett and Anoison Texas Used the Texas Litigation and TRO to Assert False Ownership.**

81. Having already interfered with and misappropriated the ANOISON mark, Hallett and Anoison Electronics stepped up their aggressive tactics.

82. On June 15, 2026, Hallett signed a verification in the Travis County lawsuit (along with a companion affidavit) as a "member or manager" of Anoison Texas, declaring that he read the Original Petition and Application for Temporary Restraining Order and that the factual statements were true and correct. (*See* Ex. J at 17.)

83. In that affidavit, he asserted that Anoison Texas owns and operates under the ANOISON name and mark, together with associated goodwill, and owns its website and domain. (*See id.* at 18-19)

84. Hallett's affidavit further asserted that Zhou sold his entire ownership interest in Anoison Texas and that the company retained ownership of assets and goodwill, including rights to the ANOISON name and business. (*See id.*)

85. Those assertions are untrue and evidenced by the federal trademark record, the USPTO assignment record, the history of the ANOISON business, and the lack of any transfer by Mr. Zhou (at any time) of the ANOISON name and mark to Anoison Texas. (Zhou Dec. ¶ 38; Ex. C; Ex. D; Ex. F.)

86. Based on Hallett's verification and affidavit, Anoison Texas obtained a Temporary Restraining Order in Travis County, Texas on June 26, 2026. (*See* Ex. J-1.)

87. The Texas TRO purports to restrain Anoison RF and Zhou from using the "Anoison" name or confusingly similar names, marks, or domains in connection with radio-frequency, electronics, coaxial-component, or related businesses. (*See id.*)It also orders restoration of disputed website and domain access to Anoison Texas. (*See id.*)

88. Anoison Japan was not named as a party in the Travis County action. (*See* Ex. J.)

89. The Texas TRO interferes with Anoison Japan's authorization for Anoison RF to conduct ANOISON-branded business in the United States and interferes with the sale and distribution of ANOISON-branded products sourced from Anoison China. (Zhou Dec. ¶¶ 39–41, 58–61.)

90. Nothing requested in this action seeks to enjoin the Travis County court. Anoison Japan seeks in-personam relief against Defendants' infringing commercial trademark use, website publication, technical support, marketplace representations, and acts taken in active concert to confuse customers and vendors.

**G. Confusion, Irreparable Harm, and Emergency Need**

91. Defendants' use of ANOISON, ANOISON USA, and anoisonusa.com is causing actual and likely confusion among customers, vendors, sales representatives, distributors, commercial partners, and marketplace participants. (Zhou Dec. ¶¶ 42–53; Ex. H; Ex. I; Ex. N.)

92. Customers searching for ANOISON-branded RF and microwave products encounter anoisonusa.com and are likely to believe they are purchasing from or through Anoison Japan or an authorized ANOISON representative, even though Anoison Texas cannot fulfill future ANOISON orders. (Zhou Dec. ¶¶ 28–32, 53–57.)

93. The Texas litigation, combined with Defendants' operation and support of anoisonusa.com, is interfering with Anoison Japan's ownership and control of the ANOISON mark, impairing Anoison Japan's authorized United States affiliate, and confusing customers, vendors, and the marketplace about who owns and controls the ANOISON brand. (Zhou Dec. ¶¶ 53-61.)

94. The harm is immediate, cumulative, and not adequately remediable by damages because Defendants' conduct injures brand control, goodwill, customer confidence, vendor continuity, supply-chain relationships, and the integrity of ANOISON-branded communications. (Zhou Dec. ¶ 56.)

95. Annual United States purchases of ANOISON-branded products are approximately $3.2 million, averaging approximately $267,000 per month or $8,767.12 per day. (Zhou Dec. ¶ 62.)

96. Every day the infringing website and false ownership narrative remain active harms Anoison Japan and its authorized U.S. channel, while Anoison Texas cannot service the customers it is confusing because it has no product to sell. ( Zhou Dec. ¶¶ 55–57, 62–63.)

## VI.
## CAUSES OF ACTION

**Count I - Federal Trademark Infringement - 15 U.S.C. § 1114 - Against All Defendants.**

97. Anoison Japan incorporates the preceding paragraphs.

98. Anoison Japan owns U.S. Trademark Registration No. 3,636,004 for ANOISON.

99. Defendants have used in commerce reproductions, copies, counterfeits, or colorable imitations of ANOISON in connection with the sale, offering for sale, distribution, advertising, promotion, website publication, technical support, and/or commercial presentation of goods and services, including through anoisonusa.com and related communications.

100. Defendants' uses are likely to cause confusion, mistake, or deception as to source, affiliation, sponsorship, approval, ownership, authorization, and control.

101. Defendants' infringement is knowing, intentional, and willful because Defendants knew of the ANOISON mark, knew or were put on notice that Anoison Texas did not own it, and

nevertheless used, operated, supported, published, or continued to support the accused ANOISON-branded website and marketplace communications.

102. Anoison Japan is entitled to injunctive relief, damages, disgorgement of profits, corrective relief, costs, and attorneys' fees.

**Count II - False Designation of Origin and Unfair Competition - 15 U.S.C. § 1125(a) - Against All Defendants.**

103. Anoison Japan incorporates the preceding paragraphs.

104. Defendants have used in commerce words, names, symbols, devices, false designations of origin, false or misleading descriptions of fact, and false or misleading representations of fact that are likely to cause confusion, mistake, or deception as to origin, source, affiliation, sponsorship, approval, ownership, or authorization.

105. Those false designations include Defendants' use of ANOISON, ANOISON USA, anoisonusa.com, the ANOISON logo, ANOISON product categories, ANOISON product selectors, Build-a-Cable tools, ANOISON business descriptions, and statements suggesting that Defendants are the official or authorized United States ANOISON source.

106. Defendants also misrepresent the nature, characteristics, and qualities of their commercial activities by presenting Anoison Texas as able to supply ANOISON-branded products despite its lack of authorization, lack of manufacturing capacity, lack of inventory, and lack of supply rights.

107. Anoison Japan has been and will continue to be damaged by Defendants' false designation and unfair competition.

**Count III - Cyberpiracy / Cybersquatting - 15 U.S.C. § 1125(d) - Against Anoison Texas, Hallett, and Rivet to the Extent Rivet Registered, Used, Controlled, Managed, or Materially Participated in Use of the Domain.**

108. Anoison Japan incorporates the preceding paragraphs.

109. The ANOISON mark was distinctive before the registration and use of anoisonusa.com.

110. The anoisonusa.com domain name is confusingly similar to ANOISON because it incorporates the entire registered mark and adds only the geographic term “USA.”

111. On information and belief, Defendants registered, trafficked in, used, controlled, managed, directed, authorized, technically supported, or materially participated in use of anoisonusa.com with a bad-faith intent to profit from the ANOISON mark.

112. Bad faith is shown by Defendants’ knowledge of the ANOISON mark, lack of trademark ownership, lack of authorization, use of a confusing domain suggesting an official United States ANOISON presence, copying of the official ANOISON website, use of privacy-shielded registration information, continued use after notice, and use of the domain to disrupt Anoison Japan’s authorized U.S. channel.

113. Anoison Japan is entitled to injunctive relief, transfer or cancellation of the domain name, statutory damages or actual damages, costs, and attorneys’ fees as allowed by law.

**Count IV - Contributory Trademark Infringement and Contributory False Designation - Against Rivet.**

114. Anoison Japan incorporates the preceding paragraphs.

115. Upon information and belief, Rivet supplied website-development, hosting, maintenance, SEO, backend-administration, domain-management, content-development, analytics, email-routing, form-routing, or other digital-marketing services used to publish and support anoisonusa.com.

116. Rivet had actual knowledge or reason to know that anoisonusa.com used the ANOISON mark without authorization and that Anoison Texas’s ownership claim was disputed.

117. After actual notice, Rivet continued to supply services to Anoison Texas, Hallett, and/or their representatives that enabled the continued infringing use of ANOISON, ANOISON USA, and anoisonusa.com.

118. Rivet's continued support materially contributed to and facilitated direct infringement and false designation by Anoison Texas and Hallett.

119. Anoison Japan is entitled to injunctive relief, damages, disgorgement of profits, corrective relief, costs, and attorneys' fees as allowed by law.

**Count V - Declaratory Judgment - 28 U.S.C. sections 2201 and 2202 - Against All Defendants**

120. Anoison Japan incorporates the preceding paragraphs.

121. An actual, immediate, and justiciable controversy exists regarding ownership, authorization, infringement, and control of the ANOISON mark, the ANOISON USA designation, anoisonusa.com, website content, and authorized United States use through Anoison RF.

122. Anoison Japan seeks declarations that: (a) Anoison Japan owns U.S. Registration No. 3,636,004 and associated goodwill; (b) Anoison Texas does not own the federal ANOISON mark; (c) the 2023 unit-interest transaction did not assign the ANOISON mark, U.S. Registration No. 3,636,004, or associated goodwill to Anoison Texas, Hallett, Pollack, Young, or Rivet; (d) Anoison Japan has authorized Anoison RF to use ANOISON in the United States; (e) Defendants' use and support of ANOISON, ANOISON USA, and anoisonusa.com is unauthorized; and (f) Rivet has no right to publish, support, administer, host, maintain, promote, optimize, or otherwise assist anoisonusa.com using the ANOISON mark.

123. Declaratory relief is necessary to resolve the controversy and prevent continuing marketplace confusion and injury.

**Count VI - Texas Common-Law Trademark Infringement and Unfair Competition - Against All Defendants.**

124. Anoison Japan incorporates the preceding paragraphs.

125. Anoison Japan owns common-law rights and goodwill in ANOISON through continuous use in United States commerce and as successor owner of the federal registration and associated goodwill.

126. Defendants' use, publication, support, promotion, and maintenance of ANOISON, ANOISON USA, and anoisonusa.com is likely to cause confusion and constitutes common-law trademark infringement and unfair competition under Texas law.

127. Defendants' conduct has caused and will continue to cause injury to Anoison Japan unless enjoined.

**Count VII - Tortious Interference with Existing and Prospective Business Relations - Against All Defendants.**

128. Anoison Japan incorporates the preceding paragraphs.

129. Anoison Japan has existing and prospective business relationships with customers, vendors, sales representatives, distributors, suppliers, manufacturers, freight forwarders, and other commercial partners in connection with ANOISON-branded products.

130. Defendants knew of those relationships because Anoison Texas historically functioned as an order-intake and payment-collection conduit for ANOISON-branded products, Hallett personally participated in the business and subsequent litigation, and Rivet supported the websites and digital channels used to reach those customers and vendors.

131. Defendants intentionally interfered with those relationships by using and supporting an infringing domain and website, making or supporting false claims of ownership and control, soliciting customers and sales representatives under the ANOISON mark without

authorization, and attempting to redirect customer confidence and business away from Anoison Japan and Anoison RF.

132. Defendants' interference was independently tortious, unlawful, or improper because it included federal trademark infringement, false designation of origin, cybersquatting, contributory infringement, and false marketplace representations.

133. Anoison Japan has suffered and will continue to suffer actual damages, lost business, reputational harm, and loss of goodwill as a direct and proximate result.

## EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

134. Anoison Japan incorporates the preceding paragraphs and requests emergency relief under Federal Rule of Civil Procedure 65, 15 U.S.C. § 1116, 28 U.S.C. § 1651, and the Court's equitable powers.

135. Federal Rule of Civil Procedure 65 allows a court to issue a temporary restraining order and preliminary injunction to prevent immediate and irreparable injury, and requires the order to state the reasons it issued, state its terms specifically, and describe in reasonable detail the restrained or required acts.

### A. Likelihood of Success

136. Anoison Japan is likely to succeed on the merits. The federal trademark record and assignment record establish Anoison Japan's ownership of Registration No. 3,636,004. (Zhou Dec. ¶¶ 8–14; Ex. C; Ex. D.)

137. Defendant's use of the domain and duplication of the website by unauthorized use of the trademark ANOISON in competition in commerce for the same goods and marketplace channels is protected by the registration and associated goodwill. (Zhou Dec. ¶¶ 45–55; Ex. H.)

138. Defendants' use is likely to cause confusion because the marks are identical or nearly identical, the goods and services are identical or highly related, customers and channels overlap, the website uses ANOISON branding and product tools, and the addition of "USA" suggests official affiliation with the U.S. channel. ( Zhou Dec. ¶¶ 42–54, 56, 59.)

139. Defendants have no license, no supply contract, no manufacturing capacity, no independent inventory, and no authorization to operate as an ANOISON-branded source. (Zhou Dec. ¶¶ 26–36.)

140. Hallett's individual participation supports relief against him because he verified the state-court ownership allegations, signed the TRO affidavit, and participated in or ratified Anoison Texas's false ownership position. (Ex. J.)

141. Rivet's direct and contributory liability is supported by its role in creating, launching, hosting, maintaining, administering, optimizing, supporting, or continuing to support anoisonusa.com after actual notice of the ANOISON ownership dispute and lack of authorization. (Ex. H; Rivet Emails; Ex. N.)

**B. Irreparable Harm**

142. Anoison Japan is suffering irreparable harm. Defendants are interfering with Anoison Japan's control over its mark, confusing customers and vendors, diverting business opportunities, impairing supply-chain communications, and damaging goodwill that cannot be measured or restored by money damages alone. (Zhou Dec. ¶¶ 53–63.)

143. Under the Lanham Act, a trademark plaintiff seeking injunctive relief is "entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits.". 15 U.S.C. section 1116(a).

144. Every day the challenged conduct continues increases harm because Anoison Texas cannot sell or fulfill future ANOISON-branded products, yet Defendants' site and litigation posture tell the market otherwise. ( Zhou Dec. ¶¶ 28–38, 57, 62–63.)

145. Rivet's continued technical and marketing support of the infringing site, if not restrained, permits the harm to continue even if the other Defendants change tactics or attempt to shift responsibility.

**C. Balance of Equities**

146. The balance of equities favors Anoison Japan. Defendants have no legitimate interest in using a mark they do not own, operating or supporting a domain they are not authorized to use, or misleading the market about the source and control of ANOISON-branded products.

147. Anoison Japan, by contrast, faces loss of brand control, customer confidence, vendor confidence, and authorized United States operations if relief is denied.

148. Separately, Rivet has no legitimate interest in continuing to publish, host, optimize, administer, route, promote, or maintain an infringing website after actual notice. Rivet may preserve evidence and comply with a court order without continuing public-facing infringing use.

**D. Public Interest**

149. The public interest favors an injunction because the public has a strong interest in avoiding confusion about the source, affiliation, sponsorship, and approval of commercial goods and services, especially in technical RF, microwave, and electronics markets where customers rely on accurate source and fulfillment information.

150. The requested injunction serves the public interest by preventing customer confusion, preserving evidence, and allowing authorized ANOISON-branded transactions to proceed through the trademark owner's authorized channel.

**E. Requested Preliminary Injunction Terms**

151. Anoison Japan requests that the Court after notice, conduct a hearing and issue a preliminary injunction restraining Defendants and their officers, agents, servants, employees, attorneys, web developers, hosting providers, SEO providers, domain administrators, contractors, and all persons in active concert or participation with them who receive actual notice from:

(a) using ANOISON, ANOISON USA, anoisonusa.com, or any confusingly similar name, mark, logo, trade name, domain name, email domain, website, social-media identifier, or commercial designation in connection with RF, microwave, mmWave, electronics, coaxial-component, connector, cable, adapter, antenna, or related goods or services without authorization from Anoison Japan;

(b) operating, maintaining, publishing, hosting, updating, administering, advertising, optimizing, indexing, routing forms or emails through, or promoting anoisonusa.com or any substantially similar website using the ANOISON mark, ANOISON logo, ANOISON trade dress, ANOISON product content, Product Selector content, Build-a-Cable content, or confusingly similar content, except as necessary to comply with a court-ordered preservation or disabling obligation;

(c) representing, expressly or by implication, that Defendants own the ANOISON mark, are Anoison Japan, are affiliated with or authorized by Anoison Japan, are the official United States ANOISON source, or are entitled to sell or fulfill ANOISON-branded products without authorization from Anoison Japan;

(d) soliciting customers, vendors, sales representatives, distributors, manufacturers, or other marketplace participants under the ANOISON mark or ANOISON USA designation without authorization from Anoison Japan;

(e) using any email address, signature block, advertising, webpage, search-engine listing, metadata, SEO material, analytics tag, contact form, landing page, or marketplace communication that incorporates ANOISON or ANOISON USA in a manner likely to confuse recipients about source, affiliation, authorization, or sponsorship;

(f) using the Texas TRO, Texas petition, or any related state-court filing as a marketplace communication to represent to customers, vendors, suppliers, sales representatives, distributors, web vendors, or service providers that Defendants own or control the ANOISON mark or that Anoison Japan or Anoison RF lack authority from the trademark owner; and

(i) interfering with Anoison Japan's authorization of Anoison RF to use ANOISON in connection with lawful ANOISON-branded United States business, except through lawful litigation positions presented to a court and not as commercial marketplace statements.

152. Anoison Japan also requests an order requiring Defendants to: (a) disable public access to anoisonusa.com or remove all ANOISON-branded content from anoisonusa.com within 24 hours; (b) replace the active site only with a neutral maintenance page approved by the Court or no public-facing site at all; and (c) cease all technical, hosting, SEO, marketing, backend, form-routing, email-routing, analytics, administration, domain-management, content, and promotion support for anoisonusa.com except as necessary to preserve evidence and comply with this Court's order.

153. Anoison Japan requests that the Court set a prompt preliminary-injunction hearing and require only nominal security or such security as the Court deems proper under Fed. R. Civ. P. 65(c).

## VII.
## PRAYER FOR RELIEF

154. For these reasons, Anoison Japan respectfully requests that the Court enter judgment in its favor and award the following relief:

(a) a temporary restraining order in the form requested above;

(b) a preliminary injunction and permanent injunction in the form requested above or as otherwise appropriate;

(c) declarations as described above;

(e) an order requiring transfer, cancellation, disabling, or other appropriate disposition of anoisonusa.com under the ACPA and the Court's equitable authority;

(g) an order requiring Rivet and all persons acting with it to cease publishing, hosting, maintaining, optimizing, routing, administering, supporting, or promoting anoisonusa.com or any confusingly similar ANOISON-branded website;

(h) actual damages, Defendants' profits, corrective-advertising damages, and all other monetary relief available under 15 U.S.C. § 1117, including, but not limited to profits, damages and costs, attorney fees, treble damages, statutory damages pursuant to 15 U.S.C. § 1116(d), statutory damages pursuant to 15 U.S.C. § 1125(d)(1), and any other applicable law;

(j) statutory damages for cybersquatting, if elected and available;

(k) prejudgment and post-judgment interest;

(l) attorneys' fees and costs under the Lanham Act, Rule 65, and other applicable law; and

(m) such other and further relief to which Anoison Japan may be justly entitled.

Dated: July 7, , 2026

Respectfully submitted,

**WICK PHILLIPS GOULD & MARTIN, LLP**

By: *<u>/s/ Jeffrey L. Mills</u>*
J. Sean Lemoine
Texas State Bar No. 24027443
sean.lemoine@wickphillips.com
Jeffrey L. Mills
Texas State Bar No. 24074726
jeff.mills@wickphillips.com
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255

ATTORNEYS FOR PLAINTIFF ANOISON JAPAN CO., LTD.